Good morning, Your Honors. Deputy Attorney General Stephanie Chow, on behalf of Appellant Matthew Cate, I will attempt to reserve four minutes for rebuttal, so we'll see if I'm successful. What the Supreme Court has made clear is that a defendant seeking self-representation must be made aware of the dangers and disadvantages of proceeding without counsel, such that his choice is made with his eyes open. Well, here he was apparently advised that 20 years was the maximum, and he ended up, what, getting 35 to life? Yes, that is the case. What the U.S. Supreme Court has not established, though… Who advised him of that, the judge? The judge did not advise him, on the record at least. Presumably he filled out the form with his defense counsel, so potentially it was likely his defense counsel at the time that he was proceeding without who advised him of that potential sentence. Well, he got this form, and the form first shows maximum punishment that can be imposed upon conviction for the offenses Penal Code 215, 211, 108, 51, and 49, 6D, and so at first you have, looks like, nine years, and then it goes to 18 years, then 18 is crossed out, as is the nine years, and then we have 20 years there. And so the waiver has to be knowingly and intelligently and voluntarily made, and so the argument here is that this waiver was not knowingly and intelligently and voluntarily made because he was somehow advised at the end that the punishment was 20 years, and he got whatever it was, the maximum was life imprisonment. That turned out to be his ultimate sentence that he received. I do want to state that he was aware he was facing serious consequences and that it is not made clear by Supreme Court precedent that a statement of your maximum sentence that doesn't ultimately match up with the sentence that a defendant receives can in and of itself invalidate an otherwise valid waiver. It is common sense. If you're going to take a waiver of counsel, you have to go through a certain process, and the court needs to advise the defendant of the maximum sentence so they can waive counsel with their eyes open. Now, you've got misinformation here. And you know that this trial judge was very impatient and just sort of pushed him along, but I think you've got a big problem there. Well, I do want to get to the fact, I do dispute the fact that he wasn't fully advised of the dangers and disadvantages regardless in front of the trial court, but I also... The judge said, you understand everything on this form, defendant? I do. The court, is there any question you have of me, the defendant? Just how much time I'm given to prepare. Other than that question, no, sir. And then the judge relieves Mr. Plummer, the lawyer. And I'm looking at the last page. Yes. Stuff happened before that. Right. That was a discussion that occurred after he filled out the Lopez waiver. And prior to that, the judge did have a discussion with him in which he asked what his level of education was, if he understood the evidence code and the penal code, whether he knew that he would be at a disadvantage and he wouldn't be given any breaks if he decided to represent himself. And Duren explained that he either he understood the codes or he could research them himself and that he had... And then he was asked questions by the judge and probably got a grade of D minus, I suppose. Right. And he, despite that, he didn't indicate any hesitation that he wanted to represent himself, that he wished to exercise his right to do so and to waive counsel. But at this, before we get any further, I do want to point out a fact that may not have been previously highlighted in the briefing, which is that at the time of the Feretta motion, the charging document that was filed did allege one strike in which the 20-year sentence that he was advised of was accurate. But subsequently, after he had waived his right and started representing himself a few months later pre-trial, that information was amended to allege one of his prior convictions also qualified as an additional strike, which is what made him exposed to the 25-to-life sentence with additional penalties. But I'm not... Well, okay. So what you're saying is he didn't know that he was facing a third strike at the time? No. Because the charge hadn't been amended? The charge had not been amended, and it wasn't alleged either. It may not have been on anyone's radar at the time because the DA had not alleged it. It was taken over by another DA at some point. So in the absence of a potential third strike enhancement, is the State's position that 20 years was the maximum that he was looking at at the time? I believe so, with the one strike rather than the two. That was not alleged. You don't know for sure. Counsel, Judge Gould will ask you a question. Is there any law as to whether once a knowing and intelligent waiver has been made so a defendant can represent himself or herself, that the court has to hold supplemental hearings if the charges are amended, or the indictment increases the charges? No, Your Honor, or at least the high court has not made such a rule. And the State courts found that Duren's waiver was knowing, intelligent, and unequivocal, and he presented the issue to the California Supreme Court, who had an opportunity to rule, and they also denied it on the merits. And based on the surrounding circumstances, there's sufficient evidence to show that his waiver was knowing and voluntary, such that the State court's decisions on this matter wasn't so lacking in justification that it is error for which there's no possible fair-minded. So your position is that if he waived at the time he was only looking at 20 years, then he undertook the risk that down the road more serious charges could be added? Yes, because if he had been represented by counsel, that would be one of the things that counsel would have been aware of and researched. He undertook the responsibility to represent himself at the point that he took the waiver. It has to be. He was told it was 20 years, and the judge questioned him on it, and there was nothing about a third strike. And he relied on it, presumably. And is there anything in the record here that told him, well, we've amended the charging papers, and now you're looking at life imprisonment? I believe that there is some portion of the record that's not part of this excerpt of record where it may have indicated he was told that there was an amendment and that there was a strike. I don't know if it was explained to him exactly what that meant in terms of a change in potential exposure. And this occurred how much later after the Lopez waiver was signed? The amendment occurred, I believe, almost three months afterwards. It's in excerpts of record, page 79. I believe the amended information was filed January 13th, and his waiver was taken October 28th of the previous year, 2004. October 28th? 2004 was the Lopez waiver, and the amended information was January 13th, 2005. So I just want to make sure I understand this. So as of October 28th, 2004, it was true that the maximum he was facing at that time was 20 years? Based on the charging document that was in place at that time, yes. Right, yes. Would you tell me that again, please? Oh. The Lopez waiver was taken October 28th, 2004. I should say, Feretta waiver. Feretta waiver. And the amended information. What's that? Lopez waiver was, what was the date of that? Oh, October 28th. October 28th. 2004. 2004. Yeah. It's in that same document. Oh, yeah, I see. I'm just lazy. The amended information was filed January 13th, 2005. January 13th, 2005. And that's in excerpts of record, page 79. Under California state practice, is he re-arraigned on the amended information? He is not. That's what we would do on a superseding indictment in the federal system. In the state system, that's not required. As long as it is noticed and done before trial, the information can be amended so long as it's supported by either the facts, both the facts proven at preliminary hearing in terms of charges or the law in terms of enhancements. How was that so the information was amended? It previously charged his... I know, but when it was amended, how was it called to his attention? How was it called? They have a hearing on it. The judge said, well, we've got an information over here. It's amended. And now they've added another account, you know. So now you've got two strikes. So what's the maximum when you've got two strikes? That would make your third, if you were convicted of that felony, 25 to life. Okay, so now if you're convicted, you've got 25 to life. And then plus the potential additional enhancements. Yeah, but did the judge tell him that? It's not stated in the record what the discussion was regarding that. So he gets served with a copy of the amended information. Yes. Is that right? Yes. Okay, but there's no requirement that he be rearranged to enter a new plea to the amended information. No. Because all it's doing is giving him notice that if he's convicted on this charge, the state will be arguing that that's now the third strike. Right, yes. And they just handed it to him? Typically how it's done is... Not typically. Well, what do we know here? I mean, you know. We know it was filed on that date, and so presumably it was served on everyone who was present in court. Well, I don't know. I mean, you know, I served on the uni court and the superior court. And I'm kind of appalled when I read this, to tell you the truth. We used to take a lot of time in taking these waivers, even in the old days. You know why? Because the last thing we wanted was a defendant pro per. It's never a good idea. We'd be real nice to him. We'd send him out with a public defender, ask the public defender to give him an outline of criminal law and procedure. Maybe spend several hours with him. Give him a briefing on basic questions of miscibility of evidence. And they gave him a lot of stuff. And then after a while, he liked this public defender, you see? And then he would ask if the public defender could represent him. And you say yes. And that was all. Because people, you know, they're so busy over there. People that say, I don't want a public defender. I want a real lawyer, you know? You know that, don't you? Maybe did you ever try cases? I did. And that's what they do. Yep. So if you give them a nice public defender, that public defender, they know what their job is. They know why they're there. And meet face to face. It solves your problems. All this guy did was create problems for himself and the whole system. Right. And unfortunately, I see I am out of time and I'm counting up. I'm sorry, you're a good listener. But undoubtedly, it is always a poor choice to represent yourself. But defendants have the right to do so. I don't know if that's true. There's some. There's some. I had a prosecutor that couldn't win a case because of way behind. And people would come in there and probe her. And the defendant's name was William Shakespeare. Yeah. And he just got a credit on an armed robbery of a standard station near USC. That was in 1986. I'll have to check him out on the Internet and see if he's still doing any writing. I'll have to look him up. Mr. Duren had at least three counsels that he attempted to work with before he decided to go probe her. But we still maintain that his waiver was knowing and intelligent despite the discussion and his ultimate sentence. Based on his writing. It can be intelligent if you don't need to know what the most important thing is, the ultimate punishment. So the legal issue, though, at that point would be whether the court has a sua sponte obligation to revisit the Lopez waiver. Every time that. At the time he got the amended information, he's representing himself. He didn't have a lawyer to look at it, right? That's correct. Yes. There's a lot in Feretta about the dangers of someone without skill representing themselves. But there isn't really a lot in the literal language of Feretta about what is the maximum punishment. We'll have to hear from the appellate on that. Yes. Thank you. Thank you. Good morning, honors.  I would like to direct the court to the supplemental excerpt of record in which we have excerpted portions of a hearing conducted on January 25th, 2005. Are you a sole practitioner? I am. Okay. I am. Good for you. Thank you. I was a public defender under Judy Clark at the Federal Defenders. I read you're a woman to watch. Well, thank you. Thank you. I actually am very proud to say that she was my boss and the one who hired me. Great lawyer. She is. Terrific. Dynamite. Absolutely. Okay. So this hearing occurred after the amended information? After the amended information was filed. And this was a hearing. What's the page in your supplemental excerpt of record? Page three. It's a tiny supplemental excerpt. It really is comprised mostly of the transcript. And it's almost a repeat of what we had earlier with an unfortunately impatient judge, perhaps somewhat intolerant. This is a different judge, though, right? It's a different judge. A different inpatient judge? A different inpatient judge. Okay. And this is the trial judge. And what we had happening here was that Mr. Duran was becoming frustrated, and he was expressing to the judge that he felt like he didn't know what was happening and he didn't know the law. And he even says, I'm feeling bamboozled. Like I've stated before, I don't know the law. And the court really pulls the Lopez waiver to say, you know, we told you so. The judge pulls the Lopez, you know, gets the Lopez waiver in front of him where it says on the first page that the maximum is 20 years. The judge has the amended information alleging the two prior strikes. The judge never reviews any of the information that the Lopez waiver says the judge should review. The only thing the judge. Wasn't he, in essence, I mean, there's no discussion of the maximum punishment here. Wasn't he really trying to do what Judge Pregerson was suggesting earlier that most good trial judges would do, convince him that representing himself was really a bad idea? No. He'd been warned about that? I thought he was trying to tell him that you made your choice and you have to live with it. That's how I read it. That's exactly how I read it. And he never once says, would you like to talk to a lawyer? He never once says, would you like an opportunity for advisory council? He never once gives him the opportunity. That was turned down earlier. Right.  Judge Frazier earlier back in, I believe, September said, I don't do that. But I'm saying Judge Edwards in January when. He said, I don't do advisory council. Right. Right. Okay, counsel, let me, may I interject a couple of questions, please? So this, we had a couple of unsympathetic judges here. You know, the first one was quick, and the second one didn't really have the issue framed up to him whether the maximum punishment had changed. That wasn't the purpose of that hearing. Okay, so now the question we have here today that I need you to address is, under the AEDPA, which is what this type of case is, we can only give relief if the ruling is contrary to clearly established Supreme Court law. And, you know, we have some Ninth Circuit precedent about giving maximum punishment in a Feretta waiver colloquy. But in my reading of Feretta, I don't really see the court there addressing that issue at all. You know, it uses the phrase, knowing and intelligent waiver, which it picked up from Johnson v. Zerbst, sort of standard waiver stuff. And, you know, it can be argued that maximum punishment is part of that. But here it looks like he had the maximum punishment right when he made his waiver initially. And so the question I've got is, what Supreme Court precedent would support the idea that the court has to take into account the amendment to the information and sua sponte reopen the issue once the guy's made a waiver? Because it's the court's obligation to make sure that the defendant knows what he is doing and has his eyes wide open. But that goes back to the time of the waiver. No. There's no requirement under Feretta that, and it would be absurd, I would propose to the court, it would be absurd if Feretta said the defendant only needs to know the maximum at the time he waives. Does that mean that if they file special circumstances six months down the road and the death penalty then is triggered that the defendant doesn't have to know that? But in the federal system, I misspoke earlier when I was talking with your opposing counsel, this is really more akin to what we in the federal system would see in an 851 enhancement. And even under the statutory provision at Title 28 U.S.C. Section 851, the defendant gets notice but then it's incumbent upon the defendant to file a pleading to the government's intention to rely on the prior conviction. If after receiving that notice the defendant says nothing, there's no obligation on the part of the court to convene a hearing in order to discuss the 851 notice, is there? Well, what you're talking about is a situation where the defendant is presumably represented and he has notice. I mean, he could be served with an 851 notice after he'd invoked his Feretta rights and asked to represent himself. Right. Let me just back up. Let me ask my question then. If this is akin to an 851 notice and now we're looking at this hearing on January, what was it, the 13th or the 20-something? Fifth. 25th of 2005. Correct. Mr. Duren could easily have said after being questioned by the second Superior Court judge, you know what, I want to reconsider here. I think I want a lawyer now. He didn't say that. No, he didn't say that, but the judge wasn't really open to that possibility. Well, we don't know because he never asked. Well, I agree with Judge Gould's characterization of it is that it was not presented as even a possibility. But let me back up further. This rule of Feretta is a rule of general application. The Supreme Court has left it general deliberately and has not set out a litany of procedures or requirements. And the test and the rule is whether or not the defendant knew what he was doing and had his eyes wide open when he represented himself at trial. Well, wait, wait, excuse me, counsel. That isn't the rule that he has to have his eyes wide open when he represents himself at trial. I think Feretta says he has to have his eyes wide open and knowing and intelligent waiver. Right. So, I mean, the language of Feretta doesn't have his eyes wide open all through trial. He talks of it at the time of the waiver. Well, when we have a game changer like an information which changes the maximum from 20 to life, and it's a mandatory life under the three strikes law. It's not, we think of 35 to life as, oh, you might get out at 35. The sentence is life with the possibility of parole after 35 years. I understand. All right, so that's really a game changer. And when you have something that significant that happens, the defendant's eyes are not open at that point. He does not really know what he is doing. Counsel, on that same point, let's say anyone is representing themselves, and at trial, in the middle of the trial, a very harsh witness adverse to them testifies credibly. And now the calculus of whether they might win or lose changes dramatically. Does the trial court have a sua sponte obligation to say your eyes are no longer wide open because the odds have changed? Now you've got to use a lawyer? I don't think that odds of winning and losing at trial is the same as the punishment that you're facing. He was affirmatively told that the maximum was 20 years. Which was true at the time he was told it, when he made the decision to represent himself. But when that amended information was filed, there is absolutely no information anywhere that he understood that that changed dramatically. And at his sentencing, we have Okay, but where in FRERTA do I find the obligation to reopen the self-representation issue in January? FRERTA did not make specific procedural requirements because it's a rule of general applicability. And the Supreme Court left it open to the courts to interpret it in a case-by-case system situation, just like ineffective assistance of counsel. If that's so, how can I distinguish those Supreme Court cases which have reversed us when we have an issue that the Supreme Court has never addressed but was addressed by the state courts and we get reversed because if the Supreme Court has never spoken on the subject, then it cannot be objectively unreasonable under AEDPA for the California Supreme Court in this case to deny review. Because with the general rule of applicability, such as ineffective assistance of counsel and FRERTA, the conflict and unreasonable application goes to that general rule. And there's not a requirement that every situation is spelled out. If the interpretation that the AG is proposing is correct, then in Richter, the Supreme Court would not have done the analysis of how the attorney could have been effective. The Supreme Court would have just said, we've never issued a decision saying that counsel has to get an expert on blood or has to hire all necessary experts to be competent. All right? Richter itself demonstrates that in situations where you have the general rule of applicability, you are not required to have an on-point factual decision from the Supreme Court in order to say this is contrary to. The question is whether FRERTA even applies at this point. I'm sorry? The question is whether FRERTA even applies in January. The decision has already been made. The question is, did he know what he was doing, and did he make a knowing and intelligent decision? In October, not in January. You can say he made a knowing decision in October, but then when you get to January and you get to the re-advisement on January 25th, we have a problem because we know that the situation has changed. There's no indication that he knows about it. And at his sentencing, after he's convicted, he makes a statement which now is understandable. His statement at sentencing was, I don't think this is fair. I don't understand how this happened. First I was one strike, and now I'm three strikes. Now, that makes sense once we see this glitch in the procedure. He thought he was one strike all the way up until the time of his sentencing. Counsel, what you're really saying is that the fundamental duty of a trial judge is to see that a person gets a fair shake. That's what you're saying. Correct. And that includes making sure that they understand when the game changes dramatically and what they have before them. What Judge Edwards had before him on January 25th included a material misstatement of what the maximum sentence was. Judge Edwards had the two-page Lopez waiver in front of him. He was looking at it. But he wasn't taking the waiver from him. Let me interject a comment or a question, if I may. First of all, in your argument about statements of rules of general applicability and not requiring the precise, all the facts are here, I would agree with you if we were dealing with when he made his waiver in October. That is, if at that time, for example, he was subject to a life sentence because he'd been charged with enough strikes, and he was advised it was 20 years, I think you've got a pretty good argument that that's not a knowing and intelligent waiver, even though the Supreme Court has never defined in a specific case that phrase to require knowledge of maximum punishment. But it's really a totally different issue and one that is not covered adequately, I don't think, by your brief or by the government's brief as to whether if the waiver is voluntary and intelligent when made in October, and there's a game-changer subsequently while he's representing himself. The court has an obligation in January when the form is in front of him to sua sponte raise that issue when the self-representing defendant, as might be expected, doesn't have a clue and doesn't say anything about it. If we, by order, gave you a chance to write a supplemental brief on the subject that's come up at argument, the way this is pre-focused, would you like to do that? I would like to do that because I do think that the issue that we're talking about now is not the issue that's addressed. We're talking about whether or not there's an obligation of the court to make sure that the defendant is aware of game-changing issues that occur and whether when there's a re-advisement, the court has a duty to make sure that there's no mistake. If we were to permit that supplemental briefing, was that issue raised before the California courts? Well, the problem that I see it is not whether or not it was raised before the California courts, but it wasn't addressed even by the district courts because it was never. But I'm trying to decide whether this issue is even exhausted. I mean, if your position is that this is a completely different. My position is not that it's a completely different issue, but it's a different focus on the overall Ferretta. He raised the Ferretta issue very clearly. He said, I thought it was 20 years. It turned out it was life. I didn't know, and I was hoodwinked and bamboozled. So he clearly made out his Ferretta claim. What we're talking about is a more nuanced approach now that we have the AG relying on information, really, that they have not relied on prior to today. You know, another tact could be that at the time the waiver was taken, the representative of the district attorney's office was there, and they had a rap sheet. If they looked at it, they could see where there was this other strike looming. And there are times when these strikes don't appear initially. Like in L.A. with RDA, he rarely goes for the three-strike business unless you have a particularly violent offender. And he's expressed this view publicly. But I suppose you could also argue that at the time the Ferretta waiver is taken, that I'm sure the judge didn't have the rap sheet, but the prosecution had, that perhaps the prosecutor should have alerted the judge that this guy's got another strike, and there may be another one coming up, and then boom, he's going to be caught up by the three-strike law. And that part of his knowing an intelligent waiver should have included the fact that there may be game changers out there. I mean, just like in our system today in the federal court, where the government can come in and file superseding informations or indictments, and bring up additional charges that can produce much more severe sentences. Maybe they ought to be told that, look, this is a dynamic situation. If you don't behave yourself or whatever it is, you cause too much trouble. There may be a superseding indictment or information, and the ante goes up. That's right. It's a very common situation, both in the state court with the three strikes and in the federal court with the second offender under the drug cases, that the first charge is not going to include the drastic enhancement. And that allows more negotiation between the defense attorney and the prosecutor to deal the case before they file the more serious sentencing enhancements. And there is a question, and I do believe that there is state law, at least, and perhaps federal law that could be examined more closely with supplemental briefing, that the attorney has an obligation, the defense attorney has an obligation to advise the defendant, not just of the maximum sentence under the charge that's there in front of them, but of the maximum possible sentence based on such matters such as the rap sheet, the threat of the prosecutor to file a superseding information charging a third strike, or are threatening to file the 851. If you don't plead, you know, within a month they're going to file the 851, and then you're looking at a minimum mandatory 20, or in this case they'll file a third strike. Presumably the public defender who sat through this knew that there were these strikes on the horizon. Right. Right, so, right. He had three lawyers, right, before he finally said, I'm done with lawyers. First he had the office, the public defender office, and there's no indication that he had a problem with the public defender's office. They conflicted off, not because of a problem between the two of them, but because of a conflict they had probably with the witness. He then had the alternate public defenders. He may have had, he had an attorney, at least one attorney from the alternate public defender, and there was a Marsden hearing where that attorney was removed, and actually at that hearing Mr. Duran said, I believe representing myself would be a poor choice. I'm not asking that. I'm asking for another attorney. Then he had Mr. Plummer, Lee Plummer, who was a private attorney on the conflicts panel. He's the attorney who filled out the Lopez waiver and put the nine-year scratch, 18-year scratch, 20-year maximum on the Lopez waiver, and he was the last attorney relieved. After trial, on the initial date set for sentencing, when the probation report was published to the defendant where it was clearly stated 40 years to life, the defendant says, I need a lawyer. I want a lawyer. He was appointed a lawyer at that point who represented him through his sentencing without any problem, and he's been represented by appointed counsel when it was available since then. Okay. That was also someone from the private conflicts panel in San Diego. That's right, the private conflicts panel. Judge Pregerson, the appellant may have used all or most of their time. I'd like to ask appellant's counsel a question about supplemental briefing. Sure. So my question is this. It seemed like the argument sort of shifted our focus a bit from the initial waiver in October to the session with the second judge in January after the amended information. So my question is, as one judge, I personally think it would be helpful to us to get supplemental briefing on any issues raised by that, and my thought is that as Judge Tallman posed the caution, some of the issues being discussed may not have been exhausted or may not have been properly raised, but my question to you is do you have any, for the state, would you have any objection to supplemental briefing where you could point out if you think an issue isn't before us? If the court thinks it would be helpful to have supplemental briefing, the state would be willing to provide that. Okay, thanks. All right. If there are no additional questions. A lot of interesting issues in this case, you know, administration of justice, Feretta plea with all these complications that we now have with amended pleadings coming in, sentencing guidelines that are coming in, and all the rest of it. Thank you. Thank you both. I appreciate your help. You'll get an order on the supplemental briefing. I think that's our last matter. That's it. I think it is. It's been a wonderful week. Had a lot of cases. And now it's Friday. And we'll recess this court until the next time we meet again. Bye. All rise. The department of session is now adjourned.
judges: Pregerson, Gould, Tallman